■ In the Matter of ROBERT L. SCHULZ, Respondent, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Appellants. [606 NYS2d 459] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Kahn, J.), entered September 15, 1992 in Albany County, which granted petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, *inter alia,* to annul determinations of respondents establishing stormwater and wastewater regulations.

Environmental Conservation Law article 43 directs respondent Lake George Park Commission (hereinafter the Commission) to, among other things, promulgate regulations governing the discharge of wastewater and stormwater in the Lake George area *(see,* ECL 43-0110 [1]; 43-0112 [1]). Pursuant to that legislation, the Commission prepared draft wastewater and stormwater regulations in 1989, and after public hearings were held and extensive comments received in reference thereto, prepared revised versions of each set of regulations. Thereafter, the Commission held further hearings and again received comments and, having designated itself the lead agency for purposes of the State Environmental Quality Re-

view Act (ECL art 8) (hereinafter SEQRA), prepared environmental assessment forms (hereinafter EAFs) addressing the potential for significant environmental impact occasioned by adoption of the regulations. Finding no significant impact likely, the Commission issued negative declarations for both the stormwater regulations and the wastewater regulations, and in September 1990 adopted the revised regulations.

Petitioner commenced this combined CPLR article 78 proceeding and action for declaratory judgment in January 1991 to have the regulations declared null and void because the Commission allegedly failed to comply with SEQRA and the State Administrative Procedure Act. Although this proceeding was initially dismissed on the ground that petitioner lacked standing, that determination was subsequently reversed and the petition/complaint was reinstated (180 AD2d 852). Issue was thereupon joined and, addressing the merits, Supreme Court found the Commission's negative declarations to be "incredible as a matter of law". Reasoning that the inevitable consequence of these regulations would be the construction of an expansive sewering system in the Lake George area, Supreme Court declared the regulations null and void and enjoined their enforcement until after the preparation of an environmental impact statement (hereinafter EIS). Respondents—the Department of Environmental Conservation, its Commissioner and the Commission—appeal.

Respondents maintain that because the regulations themselves do not commit the Commission to approve or undertake any concrete action with regard to a sewer system, it rightly declined to anticipate the impact such a system would have when preparing the EAF. We disagree. SEQRA regulations mandate consideration of all "impacts which may be reasonably expected to result from the proposed action" (6 NYCRR 617.11 [a]), and this includes subsequent actions which are "likely to be undertaken as a result thereof" (6 NYCRR 617.11 [b] [2]). The record amply demonstrates that the construction of a sewer system for at least part of the area covered by the regulations would have been expected to result from their implementation, and that this was apparent and was drawn to the attention of the Commission at the time the regulations were being considered.

Several comments directed at the proposed wastewater regulations involved the likelihood of sewering the area; one, from an environmental engineer, categorically states that the proposed on-site treatment system regulations "will encourage the construction of sewers". Furthermore, the plans for in-

creased sewering in the area were already underway, as reflected by a contract entered into in late 1989 whereby DEC agreed to make a sum not to exceed $1,000,000 available to Warren County for the design of a sewer system, the request by the County for proposals for the design of an interceptor sewer line, issued in January 1990, and the fact that the draft EIS ultimately issued for this sewer project identified the wastewater regulations specifically as generating a need for sewers.

Most importantly, the wastewater management regulations themselves provide for the classification of large portions of the land involved as "non-attainment areas", where the on-site management of wastewater will not be able to conform to the regulations. They go on to state that property owners in such areas will have to consider "management in common of wastewater treatment and disposal" (6 NYCRR 646-3.7), i.e., the construction of sewers. It cannot fairly be disputed that these regulations will "creat[e] a material demand" for a sewer (6 NYCRR 617.11 [a] [9]). As a consequence, it was improper for the Commission to issue a negative declaration, with regard to the wastewater regulations, without first identifying any adverse effects that the construction of a sewer system—or at least the material demand for such a system and its likely disposition—will have on the environment, and taking a "hard look" at those effects (see, Matter of Segal v Town of Thompson, 182 AD2d 1043, 1046-1047; Matter of West Branch Conservation Assn. v Planning Bd., 177 AD2d 917, 919). In brief, Supreme Court's declaration, insofar as it applies to the wastewater regulations, was correct.

With respect to the stormwater regulations, however, there is no evidence that they will result in, or have any bearing on, sewer construction. The petition/complaint asserts that the stormwater regulations should be declared void because the Commission failed to consider the possibility that they will result in a shift from single-family homes and small commercial enterprises to larger types of development, such as condominiums and larger motels. From all that appears in this record, however, the pronouncement that such a shift will occur is speculative at best. And, inasmuch as speculative consequences need not be evaluated prior to issuance of a negative declaration (see, Matter of Industrial Liaison Comm. v Williams, 72 NY2d 137, 143), petitioner's SEQRA challenge to the stormwater regulations is without merit.

Petitioner also asserts that the Commission failed to comply with the provisions of its enabling legislation by promulgating

the stormwater regulations, which require the preparation of stormwater management plans, prior to completing a study of stormwater runoff in developed areas which is also mandated by the statute (see, ECL 43-0112 [2]). By providing that the results of the study are to be incorporated into the management plans, however, the statute itself suggests that the plans were intended to be in place when the study results became available. Although the study was not finished by its scheduled completion date of January 1, 1990, there is nothing in the statute which in any way limits the Commission's power to adopt regulations prior to completion of the study or beyond its scheduled completion date (see, ECL 43-0112 [1]; see also, Matter of Grattan v Department of Social Servs., 131 AD2d 191, 195, lv denied 70 NY2d 616; compare, Matter of Janus Petroleum v New York State Tax Appeals Tribunal, 180 AD2d 53, 55).

Lastly, we find petitioner's contentions that respondents failed to comply with the State Administrative Procedure Act to be meritless. The record discloses that the Commission provided ample notice of the proposed regulations and of the public hearings conducted with respect to their adoption, and prepared and filed proper regulatory impact and regulatory flexibility statements.

Cardona, P. J., Mikoll, Mercure and Crew III, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as declared that the stormwater regulations (6 NYCRR subpart 646-4) were improperly promulgated; said regulations are declared to be valid and the injunction prohibiting their enforcement is lifted; and, as so modified, affirmed.